15 N.J. Super. 479 (1951)
83 A.2d 612
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SAMUEL MORRIGGI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1951.
Decided October 11, 1951.
*480 Before Judges McGEEHAN, JAYNE, and WM. J. BRENNAN, JR.
Mr. John Frank, Jr., argued the cause for appellant (Messrs. Chandless, Weller, Kramer & Frank, attorneys).
Mr. Paul T. Huckin argued the cause for respondent (Mr. Francis V.D. Lloyd and Mr. Max Eisenstein, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
The appellant has been indicted and convicted of conducting and maintaining premises known as the home of "The Commerce Civic League" at No. 104 Commerce Street in the City of Garfield, Bergen County, to which persons resorted for the purpose of gambling, contrary to the statute. R.S. 2:135-3; State v. Clark, 137 N.J.L. 10 (Sup. Ct. 1948), affirmed 137 N.J.L. 614 (E. & A. 1948).
The evidence indicated that the recreational activities of the members of the League were pursued in the basement underneath a store. Entrance to the cellar was gained through a side door equipped with a sliding metal appliance which provided a peephole.
*481 On the night of November 23, 1950, the premises were unexpectedly visited by the assistant prosecutor and accompanying officers. Of the 17 or more men in the chamber, ten or more at a table were abruptly interrupted in their game of cards. The monetary stakes were on the table. The present appellant frankly acknowledged that he was conducting the resort for gain and, indeed, subsequently signed a statement of similar import. In a private conversation with the assistant prosecutor the appellant implored the former to ignore his discovery and promised immediately to discontinue the use of the premises for such unlawful practices. At the trial the appellant did not avail himself of the opportunity to testify in his own behalf. Cf. Parker v. State, 61 N.J.L. 308, 313 (Sup. Ct. 1898), affirmed 62 N.J.L. 801 (E. & A. 1899).
The appellant's guilt of the offense charged seems to have been adequately established beyond a reasonable doubt. Actually the weight of the evidence is not here introduced as a subject of debate. The judgment of conviction is sought to be unseated by reason of certain errors claimed to have been committed by the judge in the conduct of the trial. Mere error in a ruling by the trial judge committed in the course of the trial does not afford a basis for reversal unless it is apparent from a consideration of the entire record of the proceedings had upon the trial that the defendant thereby suffered manifest wrong or injury. Rule 1:2-19(a); Rule 4:2-6.
Due process of law implies the requirement of a fair and impartial trial in which there is a legitimate and decorous recognition of the substantial rights of the defendant. The judicial process, however, in its pragmatical operation is not always the mirror of impeccability and the mould of perfection. It is a human process. An appellate tribunal with its available opportunity to review the transcription of the proceedings studiously and critically may often discern in a case sub judice insignificant, unessential, or hasty rulings which upon mature consideration are deemed to have been unphilosophical *482 and injudicious. To artificially inflate their materiality would serve only to impede the administration of justice.
We are presented with such an example in the present case. During the trial the assistant prosecutor testified that it was in consequence of the receipt of "some information from some people in Garfield, some woman, the wives, to be particular " that he raided the premises. It may be inferred from the abbreviated appendix that he was cross-examined to some extent concerning the subject by the attorney of the defendant-appellant. The assistant prosecutor produced one of the letters but the objection to its admission in evidence was sustained. The deputy attorney-general who conducted the prosecution in alluding to the complaints in his summation to the jury is said to have intimated that they were of the import that "men were losing money and not bringing it home to their wives."
The summation was not recorded stenographically and therefore we do not have before us the precise language employed and its context. The summation was interrupted by the attorney of the defendant and the following comments by the court and counsel appear in the transcript:
"Mr. Eisenstein: There were complaints about the operation of this place, in that men were losing their wages and not bringing money home to their wives.
Mr. Kramer: I object to that, if the Court please.
The Court: My recollection is  of course, it should not be referred to if it is not in the evidence.
Mr. Eisenstein: May I be heard, sir?
The Court: Yes.
Mr. Eisenstein: I think the rule of law is, and I think the Court will agree, that counsel in summation may not only comment on anything that was in the evidence but may draw such deductions therefrom as counsel care to at the time of summation.
The Court: That is true.
Mr. Eisenstein: That is a fundamental rule of law.
The Court: That is correct. That is what makes argument but, as I recall it, Mr. Toth, while on the stand, read a few words from a letter which he said he had received.
I will allow the counsel to proceed.
Mr. Kramer: My objection has been noted."
*483 While we note that the trial judge remarked "of course, it should not be referred to if it is not in the evidence," and while we think he might well have then cautioned the jury to confine their deliberations solely to the evidence, yet we discover that he delivered such an instruction to the jury several times in the course of his charge.
We are unable to perceive that the episode in the trial which the appellant emphasizes subjected the defendant to manifest wrong or injury within the legal acceptation of those words in our appellate forums.
Upon consideration we deem the remaining grounds assigned for reversal to be without substantial merit. We observe that the case was submitted to the jury with instructions comprehensive of the legal principles embraced by the several requests to charge. We need only reiterate the established rule that the court is not obliged to impart to the jury requests to charge in their precise language. Error cannot be predicated merely on the refusal to charge specifically. It is sufficient if somewhere in the entire charge the principles of law, their substance and effect comprehended by the requests are clearly stated. State v. Myers, 7 N.J. 465 (1951).
Affirmed.