50 A.3d 686

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. RODNEY CULLEN, A/K/A RODNY L. CULLEN, RODNEY L. CULLEN, ERIC BROUGHTON, RODNEY BOUGHTON, TYRON SMITH, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 11, 2012—Decided September 18, 2012.

Before Judges FISHER, WAUGH and ST. JOHN.

*Jay L. Wilensky*, Assistant Deputy Public Defender, argued the cause for appellant (*Joseph E. Krakora*, Public Defender, attorney; *Mr. Wilensky*, of counsel and on the brief).

*David M. Galemba,* Assistant Prosecutor, argued the cause for respondent (*Jennifer Webb–McRae,* Cumberland County Prosecutor, attorney; *Mr. Galemba,* of counsel and on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

Defendant appeals his burglary conviction, arguing the trial judge erred in refusing to reopen the record to permit him to testify. Defendant initially waived his right to testify but, prior to summations and the jury charge, changed his mind; the judge denied defendant's request to testify. Because the judge mistakenly gave greater weight to expediency than defendant's constitutional right to testify, we reverse.

The facts relating to the charges are not complicated; indeed, in the circumstances of this appeal, they are not relevant. Defendant was charged with the third-degree burglary, *N.J.S.A.* 2C:18–2(a), of a residence in Millville; defendant, as well as two others, were arrested while still in the residence. At the conclusion of a two-day trial, defendant was convicted as charged and, after the judge denied the State's motion for an extended term, defendant was sentenced to a five-year prison term, subject to a thirty-six-month period of parole ineligibility.

During the first day of trial, the jury heard testimony from the property owner and three police officers, after which the State rested. When the judge asked whether the defense would call any witnesses, a discussion ensued concerning defendant's desire to call one of the individuals arrested with him in the Millville residence, who was then incarcerated in the county jail. While inquiries were made about that witness's availability, defendant moved for a judgment of acquittal, which, after argument from both sides, was denied. The judge then advised defendant of his right to testify, his right to remain silent and the consequences of his choice, but defendant was not immediately asked to make that choice.

After the lunch break that followed, the jailed witness was sworn and examined outside the jury's presence. He asserted his Fifth Amendment right to not incriminate himself and defense counsel advised he would not require that the witness's assertion of his Fifth Amendment right be played out in front of the jury.

Defendant then advised that he would not testify. With that, the judge called for the jury to return to the courtroom and, in the jury's presence, counsel announced that the defense had rested, following which the jury was again excused while the judge conducted a brief charge conference. At the conclusion of the conference, the judge was prepared to recall the jury to the courtroom but defense counsel requested additional time to prepare his closing statement and asked that the matter be continued until the following morning. The judge found this a "little troubling" because there had only been "a half-a-day's worth of testimony." Nevertheless, the judge relented and directed the resumption of the trial the following morning.

The next morning, before the jury was escorted into the courtroom to hear the closing arguments and the judge's charge, defense counsel advised the trial judge that defendant had just told him "that he'd like to testify before the jury." The judge asked for the State's position and the prosecutor argued that because defendant had rested he had no right to a reopening of the record. After hearing additional argument and after allowing defendant to personally address the court on this issue, the trial judge observed that he had reviewed defendant's rights with him the day before, that defendant was given "plenty of opportunity and time to make that decision," and that defendant had already "made a decision" not to testify. The judge concluded that it was "not the time" for defendant to "change [his] mind" and denied the application to reopen the record to hear defendant's testimony.

The right of an accused to testify at a criminal trial is rooted in the Fifth, Sixth and Fourteenth Amendments of the United States Constitution. *Rock v. Arkansas,* 483 *U.S.* 44, 51–52, 107 *S.Ct.* 2704, 2709, 97 *L.Ed.*2d 37, 46–47 (1987). In *State v.*

*Savage,* 120 *N.J.* 594, 628, 577 *A.*2d 455 (1990), after recognizing and outlining the considerable federal constitutional protection afforded this right as pronounced in *Rock,* the Court clarified any uncertainty about the state constitutional underpinnings of an accused's right to testify. The Court held that the right "is essential to our state-based concept of due process of law, which guarantees a 'fair and impartial trial in which there is a legitimate and decor[o]us recognition of the substantive rights of the defendant." *Ibid.* (quoting Judge Jayne's opinion for this court in *State v. Morriggi,* 15 *N.J.Super.* 479, 481, 83 *A.*2d 612 (App.Div.1951)). The Court thus declared that "a criminal defendant is entitled to testify on his or her own behalf under Article I, paragraphs 1 and 10 of our State Constitution." *Ibid.* It requires no further burdening of this opinion to conclude that the right defendant sought to exercise on the morning of the second trial day was not to be lightly disregarded.

A trial judge's exercise of discretion when faced with a request to reopen the record has been considered in far more extreme circumstances. In *State v. Wolf,* 44 *N.J.* 176, 188, 207 *A.*2d 670 (1965), for example, the Court found shortsighted a trial judge's determination that "no authority existed which would permit reopening of the proceedings for further testimony after the jury had been charged and retired to deliberate upon a verdict." The Court first declared that "[e]ven if there were no law on the subject and the problem were one of novel impression, it is inconceivable that our trial process could be so rigidly circumscribed." *Id.* at 188–89, 207 *A.*2d 670. The Court, however, went on to recognize and discuss the considerable authority for reopening the proceedings for additional testimony at such a late stage, and Justice Francis, in speaking for the Court, provided the following admonition:

> No hard and fast rule for the guidance of [the judge's] discretion can be laid down. Obviously at that late stage of the proceedings [i.e., once deliberations began] [reopening the record] should not be taken lightly. It seems sufficient to say that when a citizen's life is at stake a trial in a court of justice is not a game and the

> judge is more than an umpire. And so, when the ends of justice will be served by a reopening, it ought to be done.
> [*Id.* at 191, 207 *A*.2d 670.]

Of course, unlike the situation in *Wolf,* defendant was not on trial for his life. But the principles remain applicable. Although consideration should be given to the prejudice to the opposing party, *State v. Menke*, 25 *N.J.* 66, 71, 135 *A*.2d 180 (1957), as well as to the potential for jury confusion when a defendant tardily seeks to exercise the right to testify or offer other evidence relating to guilt or innocence, those considerations will normally give way to the interests of justice.

Here, no concerns about prejudice or confusion were urged in opposition to defendant's late request. When asked at trial for the State's position, the prosecutor did not claim the State would be prejudiced if the record was reopened and only urged a view, endorsed by the judge, that having once announced he had rested, defendant was barred from presenting additional evidence. And nothing of substance with regard to the presentation of evidence had occurred between defendant's initial decision to remain silent and his later decision to testify. Thus, the sudden appearance of defendant in the witness box would not have been perplexing to the jury or, if surprising, could have been easily explained to the jury.

The judge did not suggest the presence of prejudice or confusion in denying the request. Instead, the judge erroneously gave greater weight to expedience and the brief delay that would result than he gave to defendant's constitutional right to testify.[1] These

---

[1] Before ruling on the application, the trial judge questioned defendant directly about his proposed testimony; defendant responded that he would testify that he did not open the window into the victim's premises and was "let into the house." In response, the judge stated: "My impression of that is, who cares? It has no [bearing] on any of the elements [of] this offense." In ruling, however, the judge correctly did not assert the alleged lack of substance in defendant's proposed testimony as a basis for denying the application. Although not necessary to our decision, we would observe that such a decision must not turn on what the defendant would say from the witness stand. A defendant may testify in his or

ephemeral grounds pale in comparison to defendant's constitutional right to testify on his own behalf.[2]

Justice Potter Stewart, when a federal circuit judge, wrote that "[t]he prompt and vigorous administration of the criminal law is to be commended and encouraged[,] [b]ut swift justice demands more than just swiftness." *Henderson v. Bannan*, 256 *F*.2d 363, 390 (6th Cir.) (dissenting opinion), *cert. denied*, 358 *U.S.* 890, 79 *S.Ct.* 129, 3 *L.Ed.*2d 118 (1958). We similarly held many years ago that "[n]o eagerness to expedite business, or to utilize fully the court's time, should be permitted to interfere with our high duty of administering justice in the individual case." *Pepe v. Urban*, 11 *N.J.Super.* 385, 389, 78 *A*.2d 406 (App.Div.), *certif. denied*, 7 *N.J.* 80, 80 *A*.2d 495 (1951). Nothing has occurred in the half century since to suggest our courts should now favor expedience over the interests of justice. The judge relied on inadequate considerations and abused his discretion in denying defendant's request to exercise his important constitutional right to testify.

---

her own behalf if for no other reason than to allow the jurors to see and hear the defendant and, in that way, better know the individual whose liberty rests in their hands.

[2] The State argues that *State v. Gray*, 101 *N.J.Super.* 490, 244 *A*.2d 703 (App.Div.), *certif. denied*, 52 *N.J.* 484, 246 *A*.2d 446 (1968), compels a different result. There, the court held that the trial judge did not abuse his discretion in refusing a defendant's request to testify after he rested the day before and after summations had occurred but before the charge was given. We are not persuaded. We are bound by the cautionary admonition given by the Court in *Wolf*, quoted above, as well as *Menke, supra*, 25 *N.J.* at 70–71, 135 *A*.2d 180, in which the Court exercised far greater liberality in reviewing a trial court decision allowing the State to reopen to present additional evidence after defendant had rested than the State would have us provide defendant here. Applying the standards enunciated by the Supreme Court, we find absent from this case circumstances that would outweigh defendant's tardily-requested right to testify.

Reversed and remanded for a new trial.[3]

---

[3] Consequently, we need not reach defendant's additional arguments that: the judge erred in permitting prejudicial questioning in violation of the principles contained in *State v. Bankston*, 63 *N.J.* 263, 307 *A.*2d 65 (1973); the prosecutor exceeded the bounds of proper advocacy in his opening statement; the judge mistakenly denied defendant's motion for a change of custody; and the judge imposed an excessive sentence.