**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2118-18T2

THE ESTATE OF JAMES
MCCLENTON, by the
administrator of his estate,
ANNIE MCCLENTON,

     Plaintiff-Appellant,

v.

ANTHONY CARBONE, ESQ.,
and THE LAW OFFICES OF
ANTHONY CARBONE, PC,

     Defendants-Respondents.

_____

        Argued telephonically December 4, 2019 –
        Decided December 26, 2019

        Before Judges Hoffman and Firko.

        On appeal from the Superior Court of New Jersey, Law
        Division, Hudson County, Docket No. L-2213-17.

        Timothy Joseph Foley argued the cause for appellant
        (Foley & Foley, attorneys; Sherry L. Foley and
        Timothy Joseph Foley, of counsel and on the briefs).

Michael J. Canning argued the cause for respondents (Giordano Halleran & Ciesla, PC, attorneys; Michael J. Canning, of counsel and on the brief).

PER CURIAM

Plaintiff, the Estate of James McClenton, by the Administrator of his Estate, Annie McClenton, appeals from two December 7, 2018 trial court orders, one granting summary judgment to defendants, Anthony Carbone, and the Law Offices of Anthony Carbone, PC, dismissing her legal malpractice complaint with prejudice, and the other order denying plaintiff's cross-motion to extend the discovery end date (DED). Following our review of the record, we reverse both orders, re-instate plaintiff's complaint, and remand for further proceedings.

I.

In 2012, plaintiff retained Carbone to pursue medical negligence claims against healthcare providers involved in the evaluation and treatment of her father, James McClenton, the decedent, a former resident at Newport News Nursing Home (NNNH) in Jersey City. The decedent developed bedsores, which became infected, and according to plaintiff, was a proximate cause of his death in 2012, at the age of eighty-three.

On May 24, 2013, Carbone filed a complaint against NNNH, the City of Jersey City, County of Hudson, and State of New Jersey. On September 12,

2013, he filed an amended complaint against Jersey City Medical Center (JCMC). Carbone initiated the action without conducting an investigation, a medical records review, or consulting with any experts before or after the complaint was filed. Because Carbone believed an Affidavit of Merit (AOM) was not required under the common knowledge doctrine, he did not serve an AOM within the statutory period set forth in N.J.S.A. 2A:53A-27, resulting in dismissal of the complaint, with prejudice, as to NNNH and JCMC, in April 2014. Carbone moved for reconsideration and submitted an AOM from a pain management specialist. The motion for reconsideration was denied.

Thereafter, Carbone wrote to plaintiff advising her that she may have a claim for legal malpractice against him and his firm. He also represented to her that several experts reviewed the matter and concluded decedent's bedsores were not a proximate cause of his demise. Plaintiff contends no such review ever occurred.

On May 26, 2017, plaintiff filed a legal malpractice complaint, which included an AOM from a legal expert, against Carbone and his firm. An answer was filed on July 6, 2017. The DED assigned was September 15, 2018. Plaintiff sought to extend the original DED for a sixty-day period by consent, but defendants refused to do so. Thereafter, plaintiff moved to compel Carbone's

A-2118-18T2

deposition and to extend the DED, which was granted, and memorialized in an August 17, 2018 order. The DED was extended to November 13, 2018. The order also provided that plaintiff had to serve her expert reports by September 13, 2018, and defendants had to serve their expert reports by October 13, 2018. A January 28, 2019 trial date was assigned to the matter.

At his deposition, Carbone testified that he was not versed in medical malpractice law; he purchased an ICLE[1] book on the subject; and he researched the AOM statute. Plaintiff served two expert reports identifying the underlying medical negligence, causation, and damages in a timely fashion. She also served a legal malpractice expert report a few weeks beyond the court imposed deadline. However, defendants did not challenge late service of plaintiff's legal malpractice expert report.

On October 12, 2018, defendants moved for summary judgment shortly after plaintiff's expert reports were due, but before the DED, and seven days before receipt of the legal malpractice expert report. Defendants argued that plaintiff could not prove her case without a legal expert, and that they were prejudiced by a purported "new" theory of medical malpractice set forth in plaintiff's timely served medical expert reports. As alternative relief, defendants

---

[1] Institute for Continuing Legal Education.

moved for an extension of the DED in order to address plaintiff's new medical liability theory, and to adjourn the trial date. Plaintiff opposed the motion for summary judgment, consented to defendants' request to extend the DED, and cross-moved to extend the November 13, 2018 DED.

On December 7, 2018, the civil presiding judge heard plaintiff's cross-motion first and denied extension of the DED, stating it would be impossible for defendants to prepare for the pending trial date if the discovery period was extended, and found no exceptional circumstances existed. About an hour later that day, a different judge heard and granted defendants' summary judgment motion on the basis that the civil presiding judge had denied plaintiff's cross-motion to extend the DED, the trial date was not adjourned, and defendants would thereby be prejudiced because they had insufficient time to prepare for trial. The complaint was dismissed with prejudice. No Rule 1:7-4(a)[2] findings were made by the motion judge relative to defendants' summary judgment motion. This appeal followed.

---

[2] Rule 1:7-4(a) Required Findings. The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right . . . .

5

On appeal, plaintiff argues that defendants' summary judgment motion was improvidently granted, and the order denying an extension of the DED and adjournment of the trial date warrants reversal based upon notions of fundamental fairness. Defendants seek affirmance of both orders.

II.

We first address the discovery and trial date issues. Our standard of review for such issues is an abuse of discretion. An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). As to discovery orders, we "defer to [the] trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017). Deciding whether to grant a motion to extend the discovery period under Rule 4:24-2(e) is a discretionary decision. Huszar v. Greate Bay Hotel & Casino, Inc., 375 N.J. Super. 463, 471-72 (App. Div. 2005).

Notwithstanding the foregoing, our courts are committed to, among other things, fairness and quality service. The judiciary must strive to follow a policy

6

in favor of generally deciding contested matters on their merits rather than based on procedural deficiencies. See Woodward-Clyde Consultants v. Chem. & Pollution Scis., Inc., 105 N.J. 464, 472-74 (1987). "Cases should be won or lost on their merits and not because litigants have failed to comply precisely with particular court schedules, unless such noncompliance was purposeful, and no lesser remedy was available." Irani v. K-Mart Corp., 281 N.J. Super. 383, 387 (App. Div. 1995) (quoting Connors v. Sexton Studios, Inc., 270 N.J. Super. 390, 395 (App. Div. 1994)).

We held many years ago that "[n]o eagerness to expedite business, or to utilize fully the court's time, should be permitted to interfere with our high duty of administering justice in the individual case." Pepe v. Urban, 11 N.J. Super. 385, 389 (App. Div. 1951). Nothing has occurred in the many years since to suggest that we should now favor expedience over the interests of justice. See State v. Cullen, 428 N.J. Super. 107, 113 (App. Div. 2012).

We agree with plaintiff that the civil presiding judge abused his discretion by not extending the DED and not adjourning the trial date. Plaintiff's medical expert reports were timely filed addressing the issues of whether NNNH and JCMC deviated from the accepted standard of medical and nursing care leading to the onset of decedent's bedsores, and that the bedsores were a proximate cause

of his death. There is no evidence in the record to show late service of plaintiff's legal malpractice expert report was purposeful. We reiterate that plaintiff had to file a motion to compel Carbone's deposition, thus leading to a delay in completion and service of the legal malpractice expert report.

In support of their proximate cause defense, defendants retained Dr. Stephen M. Smith, an infectious disease expert. In his October 12, 2018 report, Dr. Smith opined that decedent's advanced dementia and other ailments were a proximate cause of his demise, not his bedsores. Plaintiff's medical expert, Dr. Richard G. Stefanacci, a board-certified geriatric specialist, issued a September 10, 2018 report setting forth his opinions relative to deviations from accepted standards of care by NNNH and Grace Healthcare Hospice (GHH), a separate entity never named in either the original complaint, or the present matter. In their summary judgment motion and on appeal, defendants argue this newly injected issue results in prejudice and surprise in defending the case. Plaintiff argues no new theories are claimed.

We are constrained to conclude the civil presiding judge misapplied <u>Rule</u> 4:24-1(c) by failing to extend the DED and not adjourning the trial date. A four-part test to determine if exceptional circumstances have been met was set forth in <u>Rivers v. LSC P'ship</u>, 378 N.J. Super. 68, 79 (App. Div. 2005):

(1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.

[Ibid. (citing Vitti v. Brown, 359 N.J. Super. 40, 51 (Law Div. 2003).]

The record reveals that plaintiff's counsel's father was ill, leading to additional discovery delays. Plaintiff's legal malpractice expert report was served on October 19, 2018 instead of September 13, 2018, five weeks after the court deadline passed. Defense counsel did not argue this was prejudicial. In his oral opinion, the civil presiding judge did not rule on whether the October 19 "amendment" was proper, or complied with Rule 4:17-7, Amendment of Answers, but simply denied plaintiff's cross-motion, and immediately sent counsel to the motion judge that day for argument on defendants' summary judgment motion. The Rivers and Vitti factors were erroneously not addressed by the civil presiding judge.

Rule 4:17-7 provides in pertinent part:

Except as otherwise provided by [Rule] 4:17-4(e), if a party who has furnished answers to interrogatories thereafter obtains information that renders such

answers incomplete or inaccurate, amended answers shall be served not later than [twenty] days prior to the end of the discovery period, as fixed by the track assignment or subsequent order. Amendments may be allowed thereafter only if the party seeking to amend certifies therein that the information requiring the amendment was not reasonably available or discoverable by the exercise of due diligence prior to the discovery end date.

Plaintiff served her legal malpractice expert report in accordance with Rule 4:17-7, within the discovery period, and more than twenty days before the November 13, 2018 DED. No certification of due diligence was required, but one was served along with the report. Defense counsel never moved to bar plaintiff's legal malpractice expert report, and it remained of record when the December 8, 2018 motions were decided.

We understand the Law Division's need to control its schedule and enforce court rules and case management orders. However, the civil presiding judge had other options to address completion of discovery vis-à-vis a pending trial date. The judge's primary concern was to ensure trial date certainty. In this complex Track III case, we note that only one sixty-day DED was granted by way of motion, not by consent. We fail to discern how depriving the parties of another discovery extension would affect the court's trial schedule or deter gamesmanship.

A-2118-18T2

The civil presiding judge's decision contains little more than his fleeting comments, and not the analysis required by Rules 4:17-7 and 4:24-1(c), constituting an abuse of discretion. Our careful review of the record leads us to conclude this matter was almost trial ready, with the exception of some limited discovery, which may need completion. The parties should have a full and fair opportunity to prosecute and defend all claims asserted, have a fair adjudication, and a decision underlying a final disposition deserving of our deference. We are thus constrained to reverse the order denying extension of the DED and remand for trial.

III.

Next we address the motion judge's summary judgment decision. We agree with plaintiff that the motion judge's findings and analysis of the summary judgment standard, Rule 4:46-2(c), were inadequate. Other than vague references to deadlines for the service of expert reports, and defendants having "jumped the gun" by hiring their medical expert before having all of plaintiffs' expert reports, the motion judge's terse decision did not satisfy the Rule 1:7-4 requirement for a clear articulation of his findings of fact and conclusions of law.

The Rule requires that a judge "by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury . . . ." R. 1:7-4. "When a trial court issues reasons for its decision, it 'must state clearly [its] factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s].'" Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594 (App. Div. 2016) (alterations in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)). "[A]n articulation of reasons is essential to the fair resolution of a case." O'Brien v. O'Brien, 259 N.J. Super. 402, 407 (App. Div. 1992). "Naked conclusions do not satisfy the purposes of R[ule] 1:7-4." Curtis v. Finneran, 83 N.J. 563, 570 (1980). Accord Gnall v. Gnall, 222 N.J. 414, 428 (2015). A judge "does not discharge [his] function simply by recounting the parties' conflicting assertions and then stating a legal conclusion . . ." Avelino-Catabran, 445 N.J. Super. at 595.

When a judge does not properly state his or her findings and conclusions, a reviewing court does not know whether the judge's decision is based on the facts and law or is the product of arbitrary action resting on an impermissible basis. See Monte, 212 N.J. Super. at 565. "Meaningful appellate review is

12

inhibited unless the judge sets forth the reasons for his or her opinion." Giarusso v. Giarusso, 445 N.J. Super. 42, 53-54 (App. Div. 2018) (quoting Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008)). Failure to do so therefore "constitutes a disservice to the litigants, the attorneys and the appellate court." Ricci v. Ricci, 448 N.J. Super. 546, 575 (App. Div. 2017) (quoting Curtis, 83 N.J. at 569-70).

Not only did the motion judge here not provide sufficient reasoning for his decision as to the matters he addressed, he never analyzed the issues raised in plaintiff's complaint. And, by simply relying upon the civil presiding judge's decision not to extend the DED or adjourn the trial date, the motion judge did not satisfy his obligation under Rules 1:7-4 and 4:46-2(c).

Plaintiff argues that dismissal of her complaint with prejudice was the "ultimate sanction" the motion judge could order and was unwarranted. We agree. "Since dismissal with prejudice is the ultimate sanction, it will normally be ordered only when no lesser sanction will erase the prejudice suffered by the non-delinquent party." Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 345 (1984).

We conclude the motion judge failed to make the requisite Rule 1:7-4 and Rule 4:46(c) findings and improperly dismissed plaintiff's complaint with

prejudice, employing the ultimate sanction possible. The judge simply based his decision on Best Practices deadlines, warranting reversal and reinstatement of plaintiff's complaint. Plaintiff has served impressive legal and medical expert reports warranting a trial.

Because the denial of plaintiff's cross-motion to extend the DED constituted a mistaken exercise of discretion, we reverse the order denying extension of the DED, and we vacate the order granting summary judgment to defendants. On remand, the trial court shall reopen discovery for thirty days to complete any discovery requested by either counsel, and a trial date shall be set.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2118-18T2